Chief Judge Fuld.
Shortly after midnight on May 14, 1966, a police officer, while on patrol duty, observed an automobile which had apparently collided with, and come to rest against, a utility pole in Binghamton. To the officer’s question, “ What happened,” the lone occupant of the car, the defendant before us, replied, ‘ ‘ I was going about five miles an hour, and I just couldn’t get around the corner.” He was obviously drunk, his breath being alcohol laden, and his speech “thick [and] slurred.” Upon being arrested and taken to the police station-, the defendant was asked to submit to a blood test. He consented *276 to do so, and the test revealed that he was ‘ ‘ intoxicated ’ ’ and “ unfit to drive.”[1] He was not given the warnings called for by Miranda v. Arizona (384 U. S. 436) —decided a month later, in June of 1966—and he relies on that omission on this appeal from his conviction of driving while intoxicated.
The Supreme Court held in Miranda (384 U. S. 436, supra) that a person in custody must, prior to being questioned, be informed of certain rights, among others, the right to remain silent and to consult with counsel. In so.deciding, the court made it exceedingly clear that it was intent solely upon protecting a defendant against in-custody interrogation which might lead to testimonial incrimination. Thus, declared the court (p. 439), “we deal with the admissibility of statements obtained from an individual who is subjected to custodial police interrogation and the necessity for procedures which assure that the individual is accorded his privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself. ’ ’ (See, also, pp. 457-458, 478.)
The initial question to be decided, therefore, is whether the withdrawal of blood, in order to ascertain its alcoholic content, and the receipt in evidence of the analysis report violate a defendant’s privilege against self incrimination. The Supreme Court answered that question in the negative in Schmerber v. California (384 U. S. 757), just a week after it decided Miranda. The petitioner, charged with driving while intoxicated, had refused, on the advice of his lawyer, to consent to a blood test and upon the trial objected to the report’s admission on the ground that the procedure, adopted offended against his due process rights, his privilege against self incrimination and his right to counsel. The trial judge overruled the objection, admitted the report, and, on appeal, the Supreme Court rejected Schmerber’s claims. “ We hold ”, wrote the court, “ that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends ” (384 U. S., at p. 761). “ The distinction which has emerged ”, continued the court (p. 764), *277 11 is that the privilege is a bar against compelling 1 communications ’ or ‘ testimony,’ but that compulsion which makes a suspect or accused the source of ‘ real or physical evidence ’ does not violate it.” (See, also, People v. Gursey, 22 N Y 2d 224, 229.) Accordingly, since the blood test proof was neither Schmerber’s testimony nor evidence relating to some communicative act on his part,1 ‘ it was not inadmissible on privilege grounds ’ ’ (384 U.S., atp. 765).
It follows from this conclusion that the defendant before us was not entitled to the Miranda warnings. Indeed, the Supreme Court in Schmerber went so far as to say that, since the privilege did not encompass or protect against the extraction of blood, there was no denial of his right to the assistance of counsel even though the petitioner Schmerber had objected to the test “ on the advice of counsel.” In short, as the court put it, “ [sjince [he] was not entitled to assert the privilege * * * [n]o issue of counsel’s ability to assist [him] in respect to any rights he did possess is presented ” (384 U. S., at p. 766).
The defendant in the present case neither asked for a lawyer nor objected to the taking of his blood. He now asserts, however, that, because a New York statute gives him a choice whether or not to submit to such a test (Vehicle and Traffic Law, § 1194, subd. I),[2] it was impermissible to subject him to the test, absent Miranda warnings, without effecting a violation of his right to counsel and his privilege against self incrimination. Although he does not put it in these words, his argument seems to be that, had he been informed of his right, he would have * availed himself of counsel and, had the latter advised against submitting to the test, he would have followed such advice — even at the cost of losing his driver’s license—in consequence of which the prosecution would have been deprived of the evidence of intoxication derived from analysis of his blood. Therefore, he insists, the failure to give him the Miranda warnings seriously prejudiced him.
*278 The defendant does have a right to counsel, as the Supreme Court observed in United States v. Wade (388 U. S. 218, 226-227), “at any stage of the prosecution * * * in court or out, where counsel’s absence might derogate from [his] right to a fair trial.” But no such danger exists in a case such as this. Quite obviously, the presence of a lawyer at the time blood is extracted from his client’s body is not required, to cull further from the Wade opinion (p. 227), to assure the defendant’s “right meaningfully to cross-examine the witnesses against him ”—namely, those involved in the pretrial blood test — “ and to have effective assistance of counsel at the trial itself.” Most appropriate here is the court’s statement in Gilbert v. California (388 TJ. S. 263, 267), with respect to the taking of a defendant’s handwriting exemplars, that there is a “ minimal risk that the absence of counsel might derogate from his right to a fair trial.”
Nor does section 1194 of the Vehicle and Traffic Law call for a different result. That statute was designed to enable the authorities to deal promptly and effectively with the scourge of drunken drivers by immediate revocation of their licenses either upon chemical proof of intoxication or upon refusal to take the blood test. This option was provided out of concern by the Legislature “ not with those who consented to take the test, but with those who were required to submit.” (People v. Ward, 307 N. Y. 73, 77.) Accordingly, section 1194 gave “ the accused * * * the choice of waiving his right against self-incrimination— assuming such a right exists—or losing the privilege to continue driving on our highways ” (Interim Report of Joint Legislative Committee on Motor Vehicle Problems, Chemical Tests for Intoxication [N. Y. Legis. Doc., 1953, No. 25], p. 26; italics supplied). However, as indicated above, the Supreme Court in its Schmerber decision resolved the problem by holding that one accused of drunk driving may not prevent the State from conducting a blood test. Consequently, there is neither need.nor reason for the presence of counsel.
Our decision in People v. Gursey (22 N Y 2d 224, supra), upon which the defendant relies, is not to the contrary. We there upheld the Appellate Term’s reversal of the defendant’s conviction for driving while intoxicated where he had asked for and been denied permission to consult with his attorney and had submitted to a drúnkometer test only after being told by the *279 police that he would lose his license if he refused. The Gursey case is distinguishable in that, unlike the one now before us, the defendant had expressly requested, and been denied, an opportunity to talk to a lawyer. We deemed such denial so offensive as to taint the subsequent criminal trial. Moreover, there is a vast difference between a failure to advise or warn a defendant of his rights — as in the present case — and a flat refusal—as in Gursey—to afford him “access to counsel” after he has requested the assistance of a lawyer. (See, e.g., People v. Ianniello, 21 N Y 2d 418, 425, cert. den. 393 U. S. 827; People v. Noble, 9 N Y 2d 571, 574.)
We have considered the other points advanced by the defendant and find them without substance.
The judgment appealed from should be affirmed.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Judgment affirmed.

. The alcoholic content of the defendant’s blood was found to be “.20 by weight ” — .15 being “ prima facie [evidence of] intoxication.”

. Section 1194 of the Vehicle and Traffic Law provides that, if a person, who is placed under arrest for driving while intoxicated, refuses,'upon request, to submit to a chemical test of his blood, “ the test shall not be given, but the commissioner shall revoke his license ”.