James E. PULLER, Jr., Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. 3232.

Supreme Court of Alaska.

Feb. 24, 1978.

· William F. Bulchis, Richard B. Collins, Inc., Anchorage, for appellant.

Allen M. Bailey, Municipal Prosecutor, Municipality of Anchorage, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BOOCHEVER, Chief Justice.

Appellant James Puller was arrested in Anchorage and charged with driving while intoxicated.[1] At trial in district court, Puller moved to suppress evidence of his refusal to take a breathalyzer test. The motion was denied; and evidence was admitted, over Puller's objection, indicating that Puller refused a breathalyzer test. The jury was instructed that it could consider Puller's· refusal to submit to the test as evidence of guilt of the offense of driving while intoxicated.[2] Puller was convicted, and his conviction was affirmed by the superior court. This appeal followed.

Because we do not believe that the pertinent Alaska statutes contemplate an evidentiary use of the fact of refusal to submit to a breathalyzer test, we reverse.[3]

Some state statutes specifically provide that evidence of refusal is admissible.[4] Others specifically provide that it is not.[5] At least two state statutes condition admissibility on the defendant's election to testify.[6] Alaska's statute is silent on the subject.[7]

AS 28.35.032 provides as follows:

*Refusal to submit to chemical test.*

(a) If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test of his breath as provided in § 31 of this chapter, after being advised by the officer that his refusal will result in the suspension, denial or revocation of his license, a chemical test shall not be given.

(b) Upon receipt of a sworn report of a law enforcement officer that a person has refused to submit to a chemical test authorized under § 31 of this chapter, containing a statement of the circumstances

---

1. Code of Ordinances, Municipality of Anchorage, § 19.70.020(A):

   *Physical Control of Vehicle.* It is unlawful for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within any area provided with Borough police protection.

2. The instruction, in full, was as follows:

   If you find that the defendant was offered and refused a choice of a blood, urine or breathalyzer sobriety test after he had been made aware of the nature of such tests and their purpose, such refusal is not sufficient, standing alone and by itself, to establish the guilt of the defendant but it is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether defendant is guilty or not guilty. The weight to which such a circumstance is entitled and whether or not such conduct shows a consciousness of guilt are matters for your determination.

   The defendant in this case is not charged with refusal to take the test. The law pro-

vides administrative sanctions for such refusal, with which we are not concerned here.

3. Our decision assumes, *arguendo*, that evidence of the fact of refusal would be relevant. We note the conflicting holdings on this point from other jurisdictions. *E. g., compare State v. Severson*, 75 N.W.2d 316 (N.D.1956) (not necessarily relevant); *with People v. Ellis*, 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393 (1966) (relevant).

4. *See, e. g.*, Ala.Code, § 32–5–193(h); Ariz.Rev. Stat.Ann., § 28–692(H); 21 Del.C., § 2749; 32 La.Rev.Stat., § 666.

5. *See, e. g.*, Ill.Rev.Stat., Ch. 95½, § 11–501(h); Md.Ann.Code, Art. 35, § 100(c); Mass.Gen. Laws Ann., Ch. 90, § 24(1)(e).

6. R.I.Gen. Laws Ann., § 31–27–2(b)(1); N.D. Cent.Code, § 39–20–08.

7. AS 28.35.032. The statute was enacted in 1969, Ch. 83, § 1, SLA 1969. There were no prior similar provisions.

surrounding the arrest and the grounds upon which his belief was based that the person was operating a motor vehicle in violation of § 30 of this chapter, the Department of Public Safety shall notify the person that his license or nonresident privilege to drive a motor vehicle in the state is revoked or suspended, or that no original license or permit will be issued for three months. In the same notice the department shall inform the person that he may initiate a proceeding in the district court to rescind the department's action. . . .[8]

.    .    .    .    .

(d) If the person who refuses to submit to the chemical test authorized by § 31 of this chapter, within two years previous to his arrest, has been convicted in this or any other state of operating a motor vehicle while intoxicated, the period of suspension for his license, nonresident privilege to drive, or denial of original license shall be one year.

We examine this statute in conjunction with AS 28.35.031.[9] Analysis of the two statutes reveals that (1) drivers impliedly consent to a test designed to determine the alcohol content of their blood;[10] and (2) refusal to submit to such a test will trigger sanctions.[11] These sanctions, enumerated in AS 28.35.032, are as follows:

1) Revocation or suspension of license or privilege for a period of three months;[12] or

2) For persons convicted of OMVI within two years of the present arrest, suspension of license or privilege for one year.[13]

Before such a refusal can serve as the basis for these sanctions, the arrested person must be warned that a refusal will result in the suspension, revocation or denial of his license.[14] The warning required to be given does not advise the person that refusal will result in the admissibility of that fact on the issue of guilt in an OMVI prosecution.

An intrinsic aid to statutory construction is found in the maxim *expressio unius est exclusio alterius*. The maxim establishes the inference that, where certain things are designated in a statute, "all omissions should be understood as exclusions."[15] The maxim is one of longstanding application,[16] and it is essentially an application of common sense and logic.[17]

With respect to AS 28.35.032, we find that the enumeration of certain sanctions, suspension or revocation of license, and the requirement that those sanctions be included in a warning preclude the imposition of additional consequences. The admissibility of evidence of the fact of refusal would constitute such an additional consequence.

---

8. The statute further provides for the nature of such court proceedings. Those provisions are inapplicable to this appeal.

9. AS 28.35.031 provides:

*Implied consent.* A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of his breath for the purpose of determining the alcoholic content of his blood if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle in this state while under the influence of intoxicating liquor.

10. AS 28.35.031, *supra*, Note 9.

11. AS 28.35.032, *supra*.

12. AS 28.35.032(b).

13. AS 28.35.032(d).

14. AS 28.35.032(a).

15. Sands Sutherland Statutory Construction, § 47.23 at 123 (4th ed. 1973).

16. *See, e. g., Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1869) (description of appellate jurisdiction of Supreme Court excludes appellate power not comprehended within the terms of the description); *Dotson v. City of Ames*, 251 Iowa 467, 101 N.W.2d 711, 713 (1960) (grant of control over animals running at large excludes power over those confined).

17. Sands, *supra*, Note 15, § 47.24 at 127.

We view the warning requirement as a protective device to assure an informed choice on the part of the motorist.[18] It would be unfair to have the driver believe that refusal would have one consequence and then permit the state to assert an additional consequence. In Washington, where a similar statutory scheme exists, the court has stated:

> [H]ad the statute intended evidentiary use of the right of refusal, it is logical that the arresting officer would be required to inform him that his refusal could be used as evidence in a criminal proceeding as well as the consequential loss of the privilege to drive. Since the statute does not require such warning, we conclude that the legislation did not contemplate the additional consequence.[19]

Since the Alaska statute, like that of Washington, requires that a driver be warned of specific results of his refusal to permit the test, we do not believe that the legislature intended that additional consequences attach.[20]

In light of our construction of AS 28.35.-032, we do not reach the constitutional issues argued in this appeal.[21] We hold that it was error to admit into evidence the fact of Puller's refusal to submit to a breathalyzer test, and to instruct the jury that they could consider such evidence as probative of guilt.

REVERSED AND REMANDED.

**18.** The mandatory warning of the named sanctions distinguishes the present case from *State v. Bock*, 80 Idaho 296, 328 P.2d 1065 (1958), where the Supreme Court of Idaho held that the absence of a statutory restriction on admissibility permits the introduction of refusal evidence. The Idaho statute quoted by the court did not require a warning.

**19.** *State v. Parker*, 16 Wash.App. 632, 558 P.2d 1361, 1363 (1976). Although the Washington court noted the existence of a "right of refusal" in that state, *see* RCW 46.20.308(1), we find it unnecessary to condition inadmissibility on the existence of such a "right." AS 28.35.032 clearly contemplates a warning of the specified consequences attendant upon a refusal.

**20.** Although Puller was charged with an offense under a municipal code, *see* Note 1, *supra*, we believe that AS 28.35.032 manifests a state policy with respect to the administration of breathalyzer tests.

**21.** Puller asserts that the admission of refusal evidence violated his privilege against self-incrimination and was manifestly unfair.