Robert S. **WIRZ** and David Meade, Appellants,

v.

**STATE** of Alaska, Appellee.

No. 3516.

Supreme Court of Alaska.

April 7, 1978.

R. Michael Jackson, Kay, Christie, Fuld & Saville, Anchorage, for appellants.

Mary Anne Henry, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

RABINOWITZ, Justice.

Appellant Wirz was arrested [1] for the offense of operating a motor vehicle while under the influence of intoxicating liquor in violation of AS 28.35.030. Subsequent to his arrest, Wirz was taken to the police station where a breathalyzer test was administered. Wirz did not refuse to take the breathalyzer test when requested to do so by the arresting officer. In the district court, Wirz moved to suppress the results of the breathalyzer test on the ground that he was not informed of his "right" to refuse to take the breathalyzer test. After the district court denied the motion, Wirz entered a plea of nolo contendere [2] while preserving his right to appeal the issue raised in the motion to suppress.[3] Wirz then appealed to

---

1. Five days after Wirz was arrested, appellant Meade was arrested for the offense of operating a motor vehicle while under the influence of intoxicating liquor. The relevant procedural context of Meade's case is identical to that of Wirz. Upon his plea of nolo contendere, Meade received the following sentence: 10 days imprisonment with 7 days suspended on condition that he commit no similar offense for a period of one year, a fine of $750 with $250 suspended, and a suspension of his driver's license for 60 days.

The Meade and Wirz appeals of the district court's judgments were consolidated in superior court.

2. Wirz received the following sentence: 10 days imprisonment with 9 days suspended on condition that he commit no similar offense for a period of one year, a fine of $500, a revocation of his driver's license for 30 days, and a requirement that he attend the Defensive Driving School.

3. In *Oveson v. Municipality of Anchorage*, 574 P.2d 801 at 803 (Alaska, 1978) at 4 n. 4, we

the superior court where the judgment of the district court was affirmed. This consolidated appeal followed.

The gist of appellants' position in this appeal is that AS 28.35.032 implies a right to refuse to take the breathalyzer test; and, in order to effectuate this right, one arrested for the offense of operating a motor vehicle while under the influence of alcohol must be informed of his right to refuse to take the breathalyzer test. The state counters by arguing that no right to refuse exists.

In our recent opinion in *Puller v. Municipality of Anchorage*, 574 P.2d 1285 (Alaska, 1978), we noted that analysis of two statutes, which are in turn relevant to the resolution of the instant appeal, demonstrates the legislature's intention that drivers be considered to have consented to a chemical test for determining the alcohol content of their blood and that refusal on the driver's part to submit to such a test will trigger certain specified consequences.[4]

Implied consent is addressed specifically by AS 28.35.031:

A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of his breath for the purpose of determining the alcoholic content of his blood if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle in this state while under the influence of intoxicating liquor.

Of further significance to the resolution of the question presented in this appeal is AS 28.35.032(a) which provides:

If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test of his breath as provided in [AS 28.35.031], after being advised by the officer that his refusal will result in the suspension, denial or revocation of his license, a chemical test shall not be given.[5]

clarified the criteria applicable to this procedure—criteria originally articulated in *Cooksey v. State*, 524 P.2d 1251 (Alaska, 1974). We explained in *Oveson* that "appeals under the *Cooksey* doctrine will not be approved unless it is clearly shown, and the parties have stipulated with trial court approval, that our resolution of the issue reserved for appeal will be dispositive of the entire case." *Oveson v. Municipality of Anchorage, supra.* However, the *Oveson* clarification of the *Cooksey* criteria expressly was given only prospective effect. Because Meade and Wirz pled and appealed prior to our decision in *Oveson v. Municipality of Anchorage, supra*, we have treated their appeals as if taken properly under the *Cooksey-Oveson* doctrine.

4. In *Puller*, we were confronted with the issue of whether the prosecution could make evidentiary use of the defendant's refusal to submit to a breathalyzer test. We answered the question in the negative, relying primarily on the provisions of AS 28.35.032(a) and noting that the required warning does not advise the arrestee that refusal to take the breathalyzer test will result in the admissibility of that fact on the issue of guilt in an OMVI prosecution.

More specifically, we concluded that the enumeration of certain consequences in AS 28.35.-032, *i. e.*, suspension or revocation of license, and the requirement that such consequences be included in a warning preclude the imposition of additional consequences. "The admissibility of evidence of the fact of refusal would constitute such an additional consequence." *Puller v. Municipality of Anchorage*, 574 P.2d at 1287 (Alaska, 1978). In the *Puller* opinion, we distinguished an aspect of *State v. Parker*, 16 Wash.App. 632, 558 P.2d 1361, 1363 (1976) (holding that in light of Washington's statutory right of refusal to submit to a chemical breath test, the defendant's refusal to take a breathalyzer test is not admissible on the issue of guilt in a subsequent prosecution for driving while intoxicated), and explained, "[W]e find it unnecessary to condition inadmissibility on the existence of '[a right of refusal]'." *Puller v. Municipality of Anchorage, supra*, at 1288 n. 19.

5. Subsections (b) and (d) of AS 28.35.032 further provide:

(b) Upon receipt of a sworn report of a law enforcement officer that a person has refused to submit to a chemical test authorized under [AS 28.35.031], containing a statement of the circumstances surrounding the arrest and the grounds upon which his belief was based that the person was operating a motor vehicle in

Appellants contend that a common sense construction of AS 28.35.031 and AS 28.35.-032(a) requires the arrestee to be advised—before being asked to take the breathalyzer test—that he can refuse the test but that refusal will result in suspension, denial or revocation of his driver's license. In support of this argument, appellants rely solely on *State v. Krieg*, 7 Wash.App. 20, 497 P.2d 621 (1972). Unlike Alaska's statutory provisions, the Washington statute involved in *Krieg* explicitly required the arresting officer to inform an arrestee of his right to refuse to take the breathalyzer test.[6] Alaska's statutes do not contain such a provision. Thus, appellants, in essence, ask this court to read into the applicable Alaska statutes a requirement similar to that contained in the Washington statute.

The state contends that no "right" exists to refuse a breathalyzer test, *i. e.*, that a lawfully arrested driver has impliedly consented to such a test by operating his motor vehicle in this state. Conceding that an arrestee can withdraw his consent to take the breathalyzer test, the state contends

that the arrestee "does not have a 'right' in the constitutional sense" to refuse to take the test.[7] In the state's analysis, the "only applicable" statute is AS 28.35.032(a) because AS 28.35.031 simply provides for implied consent. The state reads AS 28.35.032 as setting forth the required procedures which must be followed before a license can be suspended, revoked, or denied administratively.

The crux of the state's argument is that AS 28.35.032 does not require the trooper to inform the arrestee of the possibility of withdrawing his consent to take the breathalyzer test. In this regard, the state contends:

> There is no requirement that the trooper read the implied consent warning to the suspect unless and until the suspect refuses to take the breathalyzer. At that point the trooper does not *have* to read the implied consent warning, but if he does not, the administrative suspension will not take effect.[8] (emphasis in original).

violation of [AS 28.35.030], the Department of Public Safety shall notify the person that his license or nonresident privilege to drive a motor vehicle in the state is revoked or suspended, or that no original license or permit will be issued for three months. In the same notice the department shall inform the person that he may initiate a proceeding in the district court to rescind the department's action. The court proceeding shall be without jury and shall be limited to the issues of whether

    (1) the arresting officer had reasonable grounds to believe the arrested person had been operating a motor vehicle in the state while under the influence of intoxicating liquor;

    (2) the arrested person refused to submit to the breath test upon request of the officer after being advised that his refusal would result in the suspension, revocation, or denial of his license; and

    (3) the accused defendant was informed fairly of the nature of the tests, the accuracy of the methods, machines, equipment involved, the expertise of the person administering the tests, or operator of the machines, and the accused given such other reasonable information as may be requested by him.

    .      .      .      .      .      .

    (d) If the person who refuses to submit to the chemical test authorized by [AS 28.35.031], within two years previous to his arrest, has been convicted in this or any other state of

operating a motor vehicle while intoxicated, the period of suspension for his license, nonresident privilege to drive, or denial of original license shall be one year.

6. The statute involved in *State v. Krieg*, 7 Wash.App. 20, 497 P.2d 621 (1972), was RCW 46.20.308(1) which provided, in part:

> Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506.

7. The state notes that the arresting officer in both cases advised appellants of their rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8. The principal authority cited by the state in support of its position is *Elliott v. Dorius*, 557 P.2d 759 (Utah 1976). In that case, appellant had been advised that if he refused to submit to a properly requested chemical test, the Utah Department of Public Safety would revoke his license for one year. Appellant argued that the Utah statute provided a specified time sequence to which the officer must adhere, *i. e.*, that the officer must first request the arrestee to submit to the test designated and following a refusal, the officer must advise the person of his rights. The Utah Supreme Court rejected this contention and explained, in part:

We think the state's argument is persuasive [9] and in accord with the legislature's intent in enacting AS 28.35.031 and AS 28.35.032(a). Although resolution of the question presented by this appeal is not free from doubt, we are not persuaded to imply a requirement that an arrestee be advised that he has the right to refuse to take a breathalyzer test. Neither AS 28.35.031 nor AS 28.35.032(a) explicitly grants or recognizes a right on the part of an arrestee to refuse to take a breathalyzer test. Nor do these statutes impose a duty upon the arresting officer to advise the driver that he has the right to refuse to take the test. Although several states have chosen to provide that the arrestee has such a right [10] and, further, that the arresting officer must inform him of his right to refuse to take the test, Alaska's legislature has not adopted such provisos.

Given the absence of a specific requirement that arrestees be advised of a right to refuse to undergo the chemical test, we conclude that it would be inappropriate for this court to engraft such a requirement onto AS 28.35.031. As we analyze the legislature's intent in enacting AS 28.35.031 and AS 28.35.032, the sections provide that the operator of a motor vehicle in Alaska has consented to chemical tests of his blood's alcohol content and that after the arrested operator refuses to take the chemical test, he must be advised of the consequences flowing from his contemplated refusal. The arrestee must be permitted to reconsid-

er his refusal in light of that information.[11] Thus, we conclude that the superior court correctly affirmed the district court's denial of appellants' respective motions to suppress. We hold that neither AS 28.35.031 nor AS 28.35.032 requires that the arrested operator be advised he has the right to refuse to take a chemical test for the purpose of determining the alcohol content of his blood.[12]

Affirmed.

---

To comply with the mandate of the statute, the refusal and the advice, as to the resulting consequences, must be within the same time frame, but not necessarily within a precise sequence—they are integral to each other, and must be so administered. *Id.* at 762.

9. Questions relating to the administrative consequences of an arrestee's refusal to take a breathalyzer test are not before us on this appeal. Accordingly, we do not reach such issues.

10. S.D. Codified Laws § 32–23–10; Wash.Rev. Code § 46.20.308(1). Although the Oregon statute, Or.Rev.Stat. 487.805, is not phrased in terms of a "right" to refuse, it has been construed as granting such a right. *See State v. Freymuller*, 552 P.2d 867, 868 (Or.App.1976); *State v. Amnen*, 12 Or.App. 203, 504 P.2d 1400,

Sup.Ct. *review denied* (1973); *see also State v. Stover*, 271 Or. 132, 531 P.2d 258, 264–65 (1975).

11. Resolution of the issues raised on this appeal does not require us to determine the effect of a failure to advise the arrestee of consequences which may result from his refusal to take the test.

12. The statutes of our sister states relating to implied consent, rights thereunder, and notice requirements vary in significant degrees. We have found the various statutory differences of such significance that the plethora of case law relating to implied consent statutes was of little assistance in our analysis of AS 28.35.031 and AS 28.35.032.