**MUNICIPALITY OF ANCHORAGE, Petitioner,**

**v.**

**Patrick M. MARRS, Respondent.**

**No. A–352.**

Court of Appeals of Alaska.

Feb. 8, 1985.

Shelley K. Owens, Asst. Municipal Prosecutor, Allen M. Bailey, Municipal Prosecutor, and Jerry Wertzbaugher, Municipal Atty., Anchorage, for petitioner.

Carl E. Forsberg, Birch, Horton, Bittner, Pestinger & Anderson, Anchorage, for respondent.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

Patrick M. Marrs was charged with driving while intoxicated. AMC 09.28.020(A). The trial court suppressed the evidence of the results of his breathalyzer test on the assumption that the police had denied Marrs' rights guaranteed him by AS 12.25.-150(b) and Criminal Rule 5(b). *See, e.g., Copelin v. State*, 659 P.2d 1206 (Alaska 1983) (holding that the statute and the rule give a person suspected of drunk driving a right to contact his attorney prior to deciding whether or not to take a breathalyzer examination). The municipality petitions for review, contending that the trial court's order misinterprets *Copelin*. We consider the issue of sufficient importance to warrant our intervention at this point and therefore grant the petition for review. We reverse.

## FACTS

At 1:30 a.m. on December 15, 1983, Officer Newell of the Anchorage Police Department arrested Patrick Marrs on suspicion of driving while intoxicated. He drove Marrs to the police station, arriving at approximately 1:40 a.m., and began to wait in line for Marrs' processing. At 2:04, Marrs received a telephone call from his attorney, Steve Hillard, who had been notified of Marrs' arrest by Marrs' brother who had been in the car at the time of the arrest.

Marrs went into an office to talk with Hillard on the phone. Officer Newell testified that though he could not recall who was in the office during the phone call, he was sure there were probably other people present. He also testified that he kept in close proximity to Marrs during the phone call. Marrs testified that he felt unable to talk openly with Hillard because of the officer's presence, and he responded to Hillard's questions with "yes" and "no" answers. Hillard advised Marrs not to take the breathalyzer until he arrived, and he said he would be there right away.

The testimony regarding the events following the phone call was in some dispute at the hearing. Marrs testified that he told Officer Newell that his attorney was on his way. Officer Newell, however, testified that he did not know that Marrs' attorney was arriving shortly. Officer Dang, who administered the breathalyzer test, testified that he did not know that Marrs had requested to speak with his attorney. Marrs testified that after the call, he sat and waited for a while and then was given a piece of paper and was told to read paragraph eight. This paper was apparently the standard implied consent warning. Paragraph eight concerns a DWI suspect's right to a reasonable opportunity to attempt to contact an attorney during the twenty-minute observation period.[1] Marrs testified that before he had a chance to finish reading, another officer "pushed" him over to the breathalyzer machine and told him he had to take the test "now." At approximately 2:21 a.m. the police began processing Marrs for the breath test, and his breath was taken at 2:28 a.m.

Hillard testified that he drove immediately to the police station after the phone call, a trip of about five to eight minutes. Once there, he identified himself as Marrs' attorney and was kept waiting about ten minutes before being allowed to see Marrs. He interviewed Marrs at approximately 2:40 a.m., after Marrs had finished taking the breathalyzer test.

---

1. Paragraph eight of the implied consent warning was discussed in the parties' briefs.

It is fortunate that the police are notifying suspects of their *Copelin* rights. Hopefully this practice will be adopted statewide.

## DISCUSSION

The municipality first challenges District Court Judge Elaine M. Andrews' factual finding that after Marrs talked to Hillard on the telephone, Marrs told a third officer, not Officer Newell or Officer Dang, that his attorney was on his way to the police station. Judge Andrews stated that she arrived at this finding because she believed the testimony of Officers Newell and Dang that they were not told that Marrs' attorney was on his way, but also believed that Marrs was given a copy of the implied consent warning and specifically directed to paragraph eight. Judge Andrews stated: "I don't believe an officer would have done that so emphatically if there hadn't been some discussion about the fact that his attorney was on the way or something about a reasonable waiting time." Therefore, she found, "someone, although maybe not necessarily the arresting or processing officer, but someone immediately there had knowledge that the attorney was on his way."

■ We are satisfied that this factual finding is not clearly erroneous. It is clear from the record that other officers were present at the time and that one of them could have given Marrs the implied consent warning in an effort to inform him of the scope of his right to contact counsel.

The municipality also challenges the trial court's suppression of all the evidence obtained from the moment Marrs first spoke with his attorney on the phone until after Marrs spoke with his attorney in person. This included the results of the breathalyzer test. Judge Andrews stated that there were two considerations behind her decision to suppress. The first was that Marrs was not able to communicate privately with his attorney during the telephone call. Second, her "major consideration" was that the breathalyzer was given somewhere between seven and twelve minutes after he talked to his attorney and the attorney could have gotten there within a twenty to twenty-five minutes [period] and there was not twenty to twenty-five minutes given to the defendant.... So

that's the basis of the decision more importantly than whether or not there was private communication.

In *Copelin v. State*, 659 P.2d 1206 (Alaska 1983), the supreme court balanced the right an arrestee has to consult with counsel or another person against the law enforcement need to preserve evidence by an expeditious administration of the breathalyzer test. In striking a balance, the *Copelin* court held that an arrestee should be given a reasonable opportunity to contact his attorney by phone prior to being required to decide whether to take a breathalyzer examination. It qualified this right, however, saying:

The statutory right to contact and consult with counsel is not an absolute one (which might involve a delay long enough to impair testing results), but, rather, a limited one of reasonable time and opportunity that can be reconciled with the implied consent statutes.

... Reasonableness will depend on the circumstance of each case, such as the amount of time between the stop and the transportation to the station, when the request is made, and how much time is needed to set up the test. If the attorney cannot be contacted within a reasonable time the suspect must decide without the advice of counsel, whether to take the breathalyzer test.

659 P.2d at 1211–12 (footnotes omitted).

In *Farrell v. Anchorage*, 682 P.2d 1128 (Alaska App.1984), we noted that the arrestee should, to the extent possible, be given a private consultation with his attorney, and concluded that the right was denied when the police "failed to make even a minimal effort" to allow a suspect to confer privately with his attorney. *Id.* at 1131. We noted, however, that the police cannot guarantee absolute privacy consistent with the necessity of keeping the defendant under observation during the required observation period, and that the necessary degree of privacy "must be determined by balancing the individual's statutory right in consulting privately with counsel against society's strong interest in ob-

taining important evidence." *Id.* at 1130. We stated that:

> in determining the extent of privacy that is reasonable in a given case, consideration should be given to confidentiality of the attorney-client communications, and not to the separation of the arrestee from the arresting officers. Thus, while the statutory right to contact and consult counsel requires reasonable efforts to assure that confidential communications will not be overheard, observation of the arrestee may be maintained, and physical segregation or visual isolation is not required.

*Id.*

██ In Marrs' case, the officers did not guarantee Marrs' complete privacy in his conversation with Hillard. Nevertheless, we believe the *Farrell* standards were met as a matter of law. Unlike *Farrell* there was no attempt by the observing officers to stand next to Marrs and write down what he was saying. We note that Judge Andrews did not base her decision to suppress primarily on denial of privacy, and we do not believe that suppression would have been warranted on that basis.

██ Judge Andrews seemed to conclude that once Marrs had completed his telephone conversation with Hillard, the police were under an obligation to delay administration of the breathalyzer examination until Hillard could be present to confer

with Marrs, so long as Hillard could be present within a "reasonable time." Judge Andrews has read *Copelin* too broadly. *Copelin* guarantees a right to telephone or otherwise communicate with counsel immediately after arrest. Once contact was made and consultation held, Marrs had no right under AS 12.25.150(b) and Criminal Rule 5(b) to delay administration of the breathalyzer examination. This, in essence, is the balance that *Copelin* drew between a defendant's right to contact counsel and the state's need to preserve evidence. Since Marrs had the opportunity to consult on the telephone with Hillard, he received the rights guaranteed him by *Copelin*, and the police were under no duty to delay administration of the breathalyzer examination until Hillard could be present, regardless of how short a period that might, in fact, have entailed. *See Anchorage v. Geber*, 592 P.2d 1187, 1192 (Alaska 1979) (no right to have counsel present at field sobriety test).[2]

The judgment of the district court is REVERSED.

2. Judge Andrews apparently determined that attorney Hillard arrived at the police station a few minutes after the officers began preparing Marrs for the breathalyzer. We are satisfied that on this record there was no duty to interrupt the examination to permit Marrs to consult with counsel upon counsel's arrival. In so ruling, we are not unaware of the provision in AS 12.25.150(b) which expressly provides for an immediate visit with counsel following an arrest. We do not construe the statute to give an arrestee who has spoken with counsel by phone and had a reasonable opportunity to speak with him, a right to delay administration of the breathalyzer examination to permit further consultation. We are not called upon to determine what rights, if any, an arrestee who has been unsuccessful in contacting counsel by phone should have if counsel unexpectedly arrives at the station prior to administration of the breathalyzer examination. *See Farrell v. Anchorage*, 682 P.2d 1128, 1131 n. 4 (Alaska App.1984).