Bruce G. **REEKIE**, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE**, Appellee.

No. A–3194.

Court of Appeals of Alaska.

Nov. 30, 1990.

James D. Gilmore and Eric A. Johnson, Gilmore & Feldman, Anchorage, for appellant.

Michael R. Stahl, Asst. Mun. Prosecutor, and Jim Wolf, Mun. Prosecutor, Anchorage, for appellee.

Before BRYNER, C.J., and ANDREWS and FULD, District Court Judges.*

OPINION

BRYNER, Chief Judge.

A jury convicted Bruce G. Reekie of driving while intoxicated (DWI), Anchorage Municipal Code (AMC) § 09.28.020(A), and refusal to take a chemical breath test, AMC § 09.28.022(A). On appeal, Reekie contends that evidence of his alleged refusal should have been suppressed because the police denied him a reasonable opportunity to consult privately with his attorney. Reekie also argues the trial court erred when it admitted evidence of a prior refusal. We reverse.

While on routine patrol during the early morning of January 7, 1989, Anchorage Police Officers Gardner Cobb and Michael Silverman stopped Reekie because his car had expired plates and was driven in an erratic manner. Reekie's arrest for DWI followed.

The officers brought Reekie to the police station, placed him in the Intoximeter room, and tape recorded his processing. Two Intoximeters are usually available at the station, but one was broken on the night of Reekie's arrest, so the officers were required to wait. Reekie asked to call his attorney, George Freeman. Freeman was not available but returned the call a few minutes later. Reekie left the Intoximeter room and took Freeman's call in the hallway, where the telephone was located. Cobb directed Silverman to "keep an eye" on Reekie while he was on the phone to ensure that he did not put anything in his mouth during the twenty-minute observation period. Silverman stood approximately six to seven feet from Reekie throughout the entire telephone conversation and could hear everything Reekie said; Cobb initially remained in the Intoximeter room and could hear some of Reekie's conversa-

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

tion. Silverman and Cobb left the tape recorder in the Intoximeter room running while Reekie was on the telephone. The recorder picked up parts of Reekie's conversation with Freeman.

Reekie had spoken with Freeman for about a minute when Cobb told him, "You need to ask him about the test because in about ten minutes ... you're going to be asked to take the test." A couple of minutes later, Cobb asked to speak with Freeman. Cobb explained the implied consent law to Freeman and informed him that Reekie would soon be required to decide whether to take the test. Reekie then resumed his consultation with Freeman. Roughly two minutes later, Cobb told Reekie that he would have to terminate the conversation shortly.

After completing the call, Reekie repeatedly refused to take the test without Freeman present. The officers advised Reekie that he did not have a right to have his attorney present. The officers charged Reekie with refusal at the end of the twenty-minute observation period, when he again informed them he would not take the test without his attorney.

Reekie subsequently moved to suppress evidence of his refusal, alleging that Cobb and Silverman had prevented him from effectively communicating with Freeman. In support of the suppression motion, Freeman testified that while on the telephone with Reekie, he heard background noise and people talking directly to Reekie about the telephone conversation. Freeman felt that he could not freely discuss the case with Reekie because he believed that "someone was listening to the conversation or could listen to the conversation."

Reekie testified that one or two officers remained "close by" during his telephone call with Freeman. Reekie said he was aware that the officers had a recorder running and felt that he could not speak openly to Freeman while the officers stood next to him. Reekie also disputed the charge of refusal. While Reekie acknowledged initially refusing to take the test without Freeman present, he claimed that he ultimately agreed to take the test when the officers gave him one last chance.

District Court Judge Natalie K. Finn denied Reekie's suppression motion, finding in relevant part:

> [T]he defendant was afforded a reasonable opportunity to consult with an attorney before being required to decide whether or not to take the breath test, he did in fact consult with an attorney before making that decision, he did not request more privacy in order to have that conversation, and he simply failed to heed his attorney's advice. The court finds this fact situation to be somewhat closer to the *Marrs* case than to the *Farrell* case. To the extent that the defendant's conversation with his attorney was overheard by the police, that portion should be suppressed.[1]

An arrestee must be given a reasonable opportunity to contact counsel by telephone prior to being required to decide whether to take a breath test. AS 12.25.150(b).[2] However, the Alaska Supreme Court has qualified this right:

> The statutory right to contact and consult with counsel is not an absolute one (which might involve a delay long enough to impair testing results), but, rather, a limited one of reasonable time and opportunity that can be reconciled with the implied consent statutes.
>
> ... Reasonableness will depend on the circumstances of each case, such as the amount of time between the stop and the transportation to the station, when the request is made, and how much time is needed to set up the test.

---

**1.** Judge Finn cited to *Anchorage v. Marrs*, 694 P.2d 1163 (Alaska App.1985), and *Farrell v. Anchorage*, 682 P.2d 1128 (Alaska App.1984).

**2.** Alaska Statute 12.25.150(b) provides:
Immediately after an arrest, a prisoner shall have the right to telephone or otherwise communicate with the prisoner's attorney and any relative or friend, and any attorney at law entitled to practice in the courts of Alaska shall, at the request of the prisoner or any relative or friends of the prisoner, have the right to immediately visit the person arrested.

*Copelin v. State*, 659 P.2d 1206, 1211–12 (Alaska 1983) (footnote omitted). *See Zsupnik v. State*, 789 P.2d 357, 360 (Alaska 1990).

In *Farrell*, 682 P.2d at 1130, we held: "[I]n order to comply with the statutory mandate of AS 12.25.150(b), police must make a reasonable effort to accommodate an arrestee's right to consult privately with counsel once a call has been made." We went on to note, however, that the police cannot guarantee privacy under all circumstances. The amount of privacy an arrestee should receive in order to consult with counsel "must be determined by balancing the individual's statutory right in consulting privately with counsel against society's strong interest in obtaining important evidence." *Id.* We further stated:

[I]n determining the extent of privacy that is reasonable in a given case, consideration should be given to the confidentiality of the attorney-client communications and not to the separation of the arrestee from the arresting officers. Thus, while the statutory right to contact and consult counsel requires reasonable efforts to assure that confidential communications will not be overheard, observation of the arrestee may be maintained, and physical segregation or visual isolation is not required.

*Id.* We reversed Farrell's DWI conviction because an officer stood next to him and took notes on the conversation as he spoke with his attorney. We found that the police made "no effort whatsoever" to give Farrell privacy. *Id.* at 1131.

In contrast, in *Marrs*, 694 P.2d at 1163, a DWI arrestee was transported to the police station, where he received a phone call from his attorney. He went into an office to take the call. According to the processing officer, "there were probably other people present" in the room. *Id.* at 1164. The officer kept in "close proximity" to Marrs throughout the telephone conversation. *Id.* Marrs testified that he was unable to talk openly with his attorney because of the officer's presence, and he responded to the attorney's questions with "yes" and "no" answers. In affirming Marrs' conviction, we found that the mere proximity of Marrs' arresting officer did not violate Marrs' right to consult privately with his attorney. We found no other intrusive conduct by the police, noting, "[u]nlike *Farrell* there was no attempt by the observing officers to stand next to Marrs and write down what he was saying." *Id.* at 1166. *See also Pappas v. Anchorage*, 698 P.2d 1236 (Alaska App.1985) (police did not violate arrestee's right to consult privately with counsel when officer stood eight to twelve feet away and could hear conversation only because arrestee was shouting).

On appeal, Reekie contends the police failed to take reasonable steps in accordance with *Farrell* to assure that he had privacy in conversing with his attorney. In Reekie's view, Officer Silverman's presence throughout the duration of the call, Officer Cobb's interruptions, and the activation of the tape recorder precluded him from having any kind of meaningful discussion with his attorney. Reekie contends that the circumstances in his case are more similar to *Farrell* than to *Marrs*.

We agree. The record reveals that the officers in this case did virtually nothing to accommodate Reekie's right to consult privately with his attorney. The officers could easily have turned off the recorder in the adjacent Intoximeter room while Reekie spoke on the hall telephone, and they could also have assured Reekie that none of his statements that were overheard could be used against him. No explanation for the failure to take these steps has been offered, and none is apparent.

Furthermore, as was the case in *Farrell*, the officers here repeatedly engaged in conduct that affirmatively intruded on Reekie's attempts to communicate with counsel. The record establishes no necessity for these intrusions. Almost any DWI arrestee would feel reluctant to converse openly with counsel under circumstances similar to those Reekie faced following his arrest. In this case, both Reekie and his attorney specifically testified that they felt inhibited in communicating due to the intrusiveness of the police conduct.

Although *Farrell* does not entitle a DWI arrestee to complete privacy in communicating with counsel, it does impose on police the duty to take affirmative steps to ensure a reasonable opportunity to converse privately. In denying Reekie's motion to suppress, the district court did not find that the police had taken any steps to provide privacy to Reekie. Rather, the court attached significance to Reekie's failure to request more privacy than he was given. In *Farrell*, however, we specifically held that the arrestee has no obligation to request privacy. *Farrell*, 682 P.2d at 1130, 1131 n. 3. Instead, we emphasized that the burden of taking reasonable steps to provide privacy is on the police. *Id.* at 1130.

In denying Reekie's motion to suppress, the district court also reasoned that, because Reekie was able to converse with Freeman and had been advised to take the Intoximeter test, but elected to reject that advice, he had been afforded a sufficient opportunity to communicate with his attorney. However, the fact that Freeman advised Reekie to take the test and that Reekie rejected this advice is beside the point. Both Freeman and Reekie testified that lack of privacy inhibited their communication; we cannot assume that Reekie's actions would not have been different if reasonable steps had been taken to assure even a modicum of privacy. Had greater privacy been afforded, Freeman may well have been capable of giving advice more persuasively, and Reekie may well have been more receptive to the advice and more inclined to follow it.

Our review of the record convinces us that the conduct of the police in this case violated the requirements of *Farrell*, and that it was therefore clearly erroneous for the district court to deny Reekie's motion to suppress evidence of his refusal.

The conviction is REVERSED.[3]

COATS, J., not participating.

---

3. Our reversal on this issue makes it unnecessary to consider Reekie's claim that the district court erred in admitting evidence of a prior refusal at trial.