**Joel J. BABB, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. A–3740.**

Court of Appeals of Alaska.

June 14, 1991.

G.R. Eschbacher, Anchorage, for appellant.

Cesar O. Velasquez, Asst. Mun. Prosecutor, and Richard L. McVeigh, Mun. Atty., Anchorage, for appellee.

Before BRYNER, C.J., and MANNHEIMER, J., and ANDREWS, Superior Court Judge.*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

# OPINION

BRYNER, Chief Judge.

Joel J. Babb was convicted after a jury trial of driving while intoxicated (DWI) in violation of Anchorage Municipal Code 09.-28.020. Babb appeals his conviction, arguing that the district court erred in denying his motion to suppress the results of an Intoximeter 3000 test administered to him after his arrest. We affirm.

Babb was arrested for DWI and transported to an Anchorage Police Station on December 1, 1989. At the station, Babb asked to speak with an attorney before submitting to the Intoximeter test. The arresting officer, Clint Olson, allowed Babb to call attorney Jim Gorton. Babb spoke with Gorton for five or ten minutes. After the call was completed, Babb agreed to take the Intoximeter test. The test was administered approximately one hour after Babb's arrest. The Intoximeter machine measured Babb's alcohol level at .204 grams of alcohol per 210 liters of breath, more than twice the legal limit for driving while intoxicated. Olson then read Babb the form notice of his right to an independent test of his blood alcohol level. Olson indicated that he wanted to have an independent blood test done at the municipality's expense. Before transporting Babb to the hospital for the blood test, Olson read Babb his *Miranda* rights and the notice that his driver's license would be revoked. Olson also took a short statement from Babb. All of this took about ten minutes. Olson took Babb to Humana Hospital and advised a medical technician there that he needed to have an independent blood alcohol test done. While they waited for the technician to prepare the test, Babb said that he wanted to speak with his attorney again. Olson told Babb that he had to decide himself whether or not he wanted the blood test, and could not delay processing by calling his attorney. Babb refused to have his blood drawn, and no independent test was done. At the time Babb declined to have his blood drawn, approximately two hours had passed since his arrest and approximately forty-five minutes since the administration of the Intoximeter test.

Babb stated in an affidavit in support of his motion to suppress that he wanted to speak to attorney Gorton prior to having his blood drawn because he was not sure whether it was in his best interest to have an independent test administered. He also stated that had he been able to consult with Gorton, he would have gone forward with the independent blood test.

Babb moved to suppress the results of his Intoximeter test on the grounds that he had not been allowed to consult with an attorney before deciding whether to have an independent blood test done. He argued that because he was effectively denied his right to obtain evidence that might have cast doubt upon the Intoximeter test results, those results should be suppressed. District Court Judge Natalie K. Finn denied Babb's motion. Judge Finn found that neither statute nor case law established a right to consult with an attorney before deciding whether to have an independent blood test done.

 Alaska Statute 12.25.150(b) and Alaska Criminal Rule 5(b) require that a DWI arrestee be given a reasonable opportunity to contact an attorney before being required to decide whether to submit to Intoximeter testing. *Copelin v. State,* 659 P.2d 1206, 1208 (Alaska 1983). This right to contact counsel is purely statutory; the Intoximeter test is not a "critical stage" at which the constitution requires counsel's presence. *Romo v. Anchorage,* 697 P.2d 1065, 1071–72 (Alaska App.1985); *Svedlund v. Anchorage,* 671 P.2d 378, 382 (Alaska App.1983). The independent blood-alcohol test is also not a critical stage at which the constitutional right to counsel attaches.

 The statutory right to contact and consult with counsel is not absolute. An arrestee who asks to speak with counsel before taking the Intoximeter test need only be given a reasonable time and opportunity to do so. *Copelin,* 659 P.2d at 1211–12. If the attorney cannot be contacted within a reasonable time, the arrestee must

decide whether to take the test without the advice of counsel. *Id.* at 1212.

We have previously held that once a DWI arrestee has been given a reasonable opportunity to contact an attorney, and has spoken with one, the terms of *Copelin* have been satisfied. *Romo,* 697 P.2d at 1071; *Anchorage v. Marrs,* 694 P.2d 1163, 1166 (Alaska App.1985). The police need not allow the arrestee to delay his DWI processing, even for the brief period of time it would take to make a second phone call, *Romo,* 697 P.2d at 1071, or to await the arrival of an attorney who is on the way to the police station, *Marrs,* 694 P.2d at 1166. Our concern in *Romo* and *Marrs* was delay in the administration of the breath test. Here, the Intoximeter test had already been administered at the time Babb asked to call his counsel a second time. Nevertheless, the reasoning behind our decisions in *Romo* and *Marrs* is controlling. Olson gave Babb a reasonable opportunity to contact and consult with counsel. Babb's statutory right to contact counsel was fully satisfied by the call to Gorton. Olson then afforded Babb a reasonable opportunity to obtain an independent test of his blood-alcohol level. *Cf. Klepzig v. Anchorage,* 661 P.2d 1096, 1098 (Alaska App.1983) (police are only required to make a reasonable effort to preserve a breath sample).

We find no error in the district court's denial of Babb's motion to suppress the results of his Intoximeter test.

The judgment of the district court is AFFIRMED.

COATS, J., not participating.