**Donald T. KIEHL, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5492.**

Court of Appeals of Alaska.

Aug. 25, 1995.

Hearing Granted Oct. 30, 1995.

A. Rene Broker and Zane D. Wilson, Cook Schuhmann & Groseclose, Fairbanks, for appellant.

Jacqueline L. Parris and Gregory S. Fisher, Assistant District Attorneys, Harry L. Davis, District Attorney, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

BRYNER, Chief Judge.

Donald T. Kiehl appeals his conviction for driving while intoxicated (DWI), arguing that the district court should have suppressed the results of Kiehl's breath test because the officer who arrested Kiehl did not afford Kiehl a reasonable opportunity to consult privately with his attorney. We affirm.

Trooper Rae Arno arrested Kiehl for DWI and took him to the Tok trooper station for processing. As was her usual practice, Arno kept an audiotape recorder running throughout Kiehl's processing. She placed the recorder on a table near the telephone. After Arno read Kiehl the implied consent form advising him that he was required to take a breath test, Kiehl asked to talk to his lawyer. Arno gave Kiehl the telephone and helped him place a call to an attorney. As Kiehl placed the call, the first side of the tape ran out, so Arno flipped the tape over to continue the recording. At that point the trooper was "directly in front of" Kiehl. Arno did not turn the tape recorder off while Kiehl spoke on the telephone. During Kiehl's telephone conversation, Arno was in and out of the room where the telephone was located and remained within earshot of Kiehl. After speaking with his attorney, Kiehl agreed to

take the Intoximeter test. He failed the test and was charged with DWI.

Kiehl moved to suppress the results of his breath test, claiming that Arno had failed to provide him a reasonable opportunity to consult privately by telephone with his attorney. At the suppression hearing, Kiehl admitted that he had not noticed that his conversation was being recorded. Nevertheless, Kiehl claimed that, prior to his arrest, he had heard that the troopers in Tok recorded people "ninety percent of the time." He had thus assumed there was a recorder turned on during the telephone conversation. According to Kiehl, he would have said "a few more things" to his attorney, but his suspicion that he was being recorded kept him from doing so. Kiehl also testified that, due to Arno's movements in and out of the room, he had not felt comfortable and had not felt that he could speak privately with his attorney.

At the suppression hearing, Arno acknowledged that she had turned her tape recorder on as a routine matter at the inception of her contact with Kiehl, intending to tape the entire arrest process. While confirming that she had allowed the recorder to continue running throughout the telephone conversation, Arno denied that she had ever specifically intended to record Kiehl's conversation.[1] Arno also acknowledged that, as Kiehl spoke with his attorney, she had walked in and out of the room and had always remained within earshot. However, according to Arno, these movements were for the purpose of performing routine duties; the trooper paid no attention to Kiehl's conversation, which was not noticeably affected by her presence.

After hearing Kiehl's and Arno's testimony, District Court Judge Jane F. Kauvar found that Arno had acted impermissibly in allowing her recorder to remain running during Kiehl's conversation with his attorney. Accordingly, Judge Kauvar suppressed all portions of the telephone conversation that had been recorded. Judge Kauvar nevertheless declined to suppress the results of Kiehl's breath test. The judge reasoned that, because Kiehl had not been aware that Arno was recording his call, the officer's conduct did not actually impair Kiehl's communications with his attorney. Judge Kauvar further reasoned that apart from recording the telephone conversation—which had no actual effect on Kiehl's conversation— Arno had done nothing to deprive Kiehl of a reasonable opportunity to consult with his attorney.

■ Judge Kauvar did not err in reaching these conclusions. Under AS 12.25.150(b) and *Copelin v. State*, 659 P.2d 1206, 1208 (Alaska 1983), Kiehl had a right to consult his attorney before deciding whether to take the breath test. Even though police officers have a duty to maintain custodial observation of a defendant before administration of the breath test, the defendant must be given a reasonable opportunity to hold a private conversation with his or her attorney. *Reekie v. Anchorage*, 803 P.2d 412 (Alaska App.1990); *Anchorage v. Marrs*, 694 P.2d 1163 (Alaska App.1985); *Farrell v. State*, 682 P.2d 1128 (Alaska App.1984).

*Farrell, Marrs,* and *Reekie* provide guidance for accommodating the competing interests of maintaining custodial observation and allowing reasonable privacy. In *Farrell,* the defendant's conviction was reversed "because an officer stood next to [the defendant] and took notes on the conversation as he spoke with his attorney." *Reekie,* 803 P.2d at 414. In *Reekie,* "one or two officers remained 'close by' during [the defendant's] telephone call" to his attorney. *Id.* at 413. In fact, at one point, one of the officers interrupted the attorney-client conversation so that the officer could speak to the defendant's attorney himself. *Id.* Moreover, the defendant "was aware that the officers had a recorder running" during the conversation. Because of this, the defendant testified, he "felt that he could not speak openly to [his attorney]." *Id.*

In contrast, this court found no violation of the defendant's statutory right to confer with counsel in *Marrs,* 694 P.2d 1163, even though "[an] officer kept in 'close proximity' to [the defendant] throughout the telephone conver-

---

1. Arno testified that, following Kiehl's arrest, she had changed her usual practice and no longer allowed her recorder to run while an arrestee placed a call to counsel.

sation." *Reekie*, 803 P.2d at 414. Even though the defendant in *Marrs* "testified that he was unable to talk openly with his attorney because of the officer's presence" and was confined to giving "yes" and "no" answers to his attorney's questions, this court nevertheless "found that the mere proximity of [the] arresting officer did not violate Marrs' right to consult privately with his attorney." *Reekie*, 803 P.2d at 414.

Unlike *Farrell*, there was no attempt by the observing officers to stand next to Marrs and write down what he was saying. *Marrs*, 694 P.2d at 1166 (quoted in *Reekie*, 803 P.2d at 414).

The rule elucidated by *Farrell, Reekie*, and *Marrs* is that a defendant's right to confer with counsel is not violated merely because the arresting officer maintains physical proximity to the defendant. Rather, this court reversed the convictions in *Farrell* and *Reekie* because the police engaged in additional intrusive measures, intrusions that convinced the defendants that the officers were intent on overhearing and reporting the defendants' conversations with their attorneys.

▪ In the present case, Trooper Arno intruded on Kiehl's privacy in two different ways. She recorded Kiehl's telephone conversation, and she was in and out of the room while Kiehl was speaking to his attorney. We consider in turn each aspect of Arno's conduct.

As Judge Kauvar properly recognized, under *Farrell* and *Reekie*, Arno's actions in recording Kiehl's conversation amounted to a violation of Kiehl's right to confer with his attorney. As Judge Kauvar also properly recognized, this violation necessitated suppression of any portion of the recorded conversation. However, it is undisputed that Kiehl remained oblivious of the recording. Arno's conduct, while undeniably improper, did nothing to impair Kiehl's conversation.[2] Because the surreptitious recording resulted in no discernible impairment of Kiehl's consultation with counsel, Arno's misconduct had no effect on the ensuing breath test. In no sense was the test a product of the impropriety. Hence, the impropriety does not itself justify suppression of the test result.[3]

The effect of Arno's proximity to Kiehl must next be considered. Even though Arno was intermittently present in the room with Kiehl, this by itself does not show that Kiehl's rights were violated. The primary consideration is "the confidentiality of the attorney-client communications, and not ... the separation of the arrestee from the arresting officers." *Farrell*, 682 P.2d at 1130.

In Kiehl's case, Arno's physical presence was less intrusive than the officer's presence in *Marrs*, which we found permissible. Rather than "[keeping] in 'close proximity' to [the defendant] throughout the telephone conversation," Arno came and went during Kiehl's conversation with his attorney. If this conduct demonstrated anything, it was that Arno did not have a particularly keen interest in overhearing what Kiehl was saying to his attorney.

---

2. Kiehl testified that he had heard that the troopers in Tok recorded most conversations, assumed that his conversation was being recorded, and therefore felt somewhat constrained in speaking with his attorney. This testimony, however, does not strengthen his claim of prejudice resulting from Arno's recording of the conversation, since Kiehl admittedly remained unaware that his conversation was actually recorded. Given Kiehl's preconceived suspicion that the troopers would be recording him, it seems fair to infer that Kiehl would have felt ill-at-ease during the telephone conversation even if Arno had not recorded the conversation. Because Kiehl's fear that he might be taped was concededly not based on anything that Arno said or did, the district court correctly found that Arno's act of running the tape recorder had no effect on Kiehl's conversation with his attorney.

3. Our conclusion might be different if the record established that Arno's actions were motivated by an express desire to eavesdrop on Kiehl's attorney-client discussions. Kiehl insists that in fact Arno did intentionally record his conversation. We disagree. Arno's testimony, which was accepted by Judge Kauvar, establishes that eavesdropping on Kiehl's attorney-client discussions was never Arno's objective. Although the trooper unquestionably acted "intentionally" in the sense that she knowingly allowed her recorder to run during the telephone conversation, Arno's only purpose in doing so was to ensure that a complete record of Kiehl's post-arrest processing would be preserved. At no point was Arno motivated by an express desire to eavesdrop on the conversation itself.

In sum, our review of the record convinces us that Judge Kauvar was not clearly erroneous in finding that Kiehl failed to show that his telephone conversation with counsel was affected to any appreciable degree by Arno's conduct. Despite the impropriety of Arno's actions in allowing her recorder to continue running, suppressing the breath test result would not have been "tailored to the injury suffered" and so was not an appropriate remedy. *United States v. Morrison,* 449 U.S. 361, 364–65, 101 S.Ct. 665, 667–68, 66 L.Ed.2d 564 (1981).

The judgment is AFFIRMED.