Steven A. MANGIAPANE, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A–6888.

Court of Appeals of Alaska.

March 19, 1999.

Rehearing Denied April 23, 1999.

William Dennie Cook, Eagle River, for Appellant.

Carmen E. ClarkWeeks, Assistant Municipal Prosecutor, and Mary K. Hughes, Municipal Attorney, Anchorage, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## O P I N I O N

MANNHEIMER, Judge.

Steven A. Mangiapane appeals his conviction for driving while intoxicated.[1] He contends that the police denied him a fair opportunity to consult privately with an attorney before deciding whether to take an Intoximeter test. Mangiapane also contends that the trial judge should have instructed his jury that Intoximeters, even when functioning

1. Anchorage Municipal Code 9.28.020(B).

properly, can yield results that vary as much as .01 percent from a person's true blood- or breath-alcohol level. For the reasons explained here, we reject both of Mangiapane's arguments and we affirm his conviction.

Shortly after Mangiapane was arrested, he was taken to the Anchorage Police Department's Fifth Avenue substation for a breath test. While the police waited for the expiration of the 15–minute observation period mandated by 13 AAC 63.040(a)(1), Mangiapane asked to make a telephone call. Officer John Richtarcsik brought a telephone to Mangiapane but, under department policy, the officer did not release Mangiapane from his handcuffs. Instead, the officer gave Mangiapane the choice of having the telephone receiver propped between his ear and his shoulder or, instead, using the speaker feature of the telephone. Mangiapane chose the speaker phone.

Mangiapane called an attorney. While Mangiapane was on the phone, Richtarcsik backed away ten or fifteen feet and he turned off his tape recorder. Richtarcsik testified that he wished to give Mangiapane as much privacy as possible, consistent with continuing the observation period required by the breath test regulation.

After speaking with the attorney, Mangiapane decided that he would take the breath test. Mangiapane's breath test result was .112 percent blood alcohol. Mangiapane also exercised his right to an independent blood test. His blood was drawn approximately 40 minutes later, and the result was .10 percent blood alcohol.

Before trial, Mangiapane asked the district court to suppress the result of the Intoximeter test. Mangiapane claimed that, because Officer Richtarcsik remained within ten to fifteen feet of him during the telephone call, the officer had denied Mangiapane a fair opportunity to consult with the attorney before deciding whether to take the breath test.

District Court Judge Gregory J. Motyka held a hearing to resolve this issue. Officer Richtarcsik was the sole witness at this hearing; we have already summarized his testi-

mony. Based on Richtarcsik's testimony, Judge Motyka concluded that the police had not intruded improperly into Mangiapane's conversation with his attorney. The judge therefore denied Mangiapane's request to suppress the Intoximeter result.

In a series of cases [2], this court has held that "[e]ven though police officers have a duty to maintain custodial observation of [an arrestee] before administration of the breath test, [the arrestee] must be given a reasonable opportunity to hold a private conversation with his or her attorney." [3] But an arrestee's right to confer with counsel "is not violated merely because the arresting officer maintains physical proximity to the [arrestee]". [4] This court has suppressed Intoximeter results only when, in addition to maintaining physical proximity, "the police engaged in additional intrusive measures, intrusions that convinced [arrestees] that the officers were intent on overhearing and reporting [the arrestees'] conversations with their attorneys." [5]

In the present case, Officer Richtarcsik maintained observation of Mangiapane but he did not engage in additional intrusive conduct to deter Mangiapane from conferring with his attorney or intrude into the privacy of the attorney-client conversation. We agree with Judge Motyka that the officer's actions did not violate Mangiapane's right to confer with counsel.

We also uphold Judge Motyka's ruling for a second reason: Mangiapane offered no evidence that Officer Richtarcsik's actions deterred him from communicating with his attorney. This is a necessary element of Mangiapane's suppression argument. For instance, in *Kiehl v. State* we upheld the admissibility of the defendant's breath test because, even though the police officer surreptitiously recorded Kiehl's conversation with his attorney, "Kiehl remained oblivious

[to] the recording" and thus "the surreptitious recording resulted in no discernible impairment of Kiehl's consultation with counsel". [6]

Mangiapane's remaining contention is that District Court Judge Peter G. Ashman should have instructed the jury that the Intoximeter machine (even when properly calibrated and functioning normally) can yield results that vary as much as .01 percent from the subject's true blood-alcohol level. In *Haynes v. Alaska Department of Public Safety* [7], the supreme court recognized this intrinsic margin of error and ruled that defendants must be given the benefit of this potential error when determining whether they had driven a motor vehicle with a blood-alcohol level of .10 percent or greater. [8] In essence, the *Haynes* decision required the State to introduce an Intoximeter result of .11 percent or higher in order to prove a defendant guilty of driving while intoxicated under AS 28.35.030(a)(2) or the equivalent Anchorage municipal ordinance, AMC 9.28.020(B)(2).

The Alaska Legislature reacted to the *Haynes* decision by enacting AS 28.40.060. Under this statute,

> if an offense described [in Title 28] requires that a chemical test of a person's breath produce a particular result, and [if] the chemical test is administered by a properly calibrated instrument approved by the Department of Public Safety, the result described by statute is not affected by the instrument's working tolerance.

The practical effect of this statute is to modify the definition of driving while intoxicated under AS 28.35.030(a)(2).

As written, AS 28.35.030(a)(2) declares that a person is guilty of driving while intoxicated "if the person operates or drives a motor vehicle ... when, as determined by

2. See *Kiehl v. State,* 901 P.2d 445 (Alaska App. 1995); *Reekie v. Anchorage,* 803 P.2d 412 (Alaska App.1990); *Anchorage v. Marrs,* 694 P.2d 1163 (Alaska App.1985); *Farrell v. Anchorage,* 682 P.2d 1128 (Alaska App.1984).

3. *Kiehl,* 901 P.2d at 446.

4. *Id.* at 447.

5. *Id.*

6. *Id.,* 901 P.2d at 447.

7. 865 P.2d 753 (Alaska 1993).

8. See *id.* at 755–56.

a chemical test taken within four hours after the alleged offense was committed, there is 0.10 percent or more by weight of alcohol in the person's blood ... or when there is 0.10 grams or more of alcohol per 210 liters of the person's breath". In *Haynes*, the supreme court interpreted this language as meaning that the State had to prove, by means of a chemical test, that the driver's blood *actually* contained at least .10 percent alcohol by weight, or that the person's breath *actually* contained at least .10 grams of alcohol per 210 liters. The newly enacted statute rejects this interpretation of the offense. AS 28.40.060 effectively declares that a driver violates AS 28.35.030(a)(2) if, within four hours of driving, the driver is tested on a properly calibrated, properly functioning Intoximeter and the driver's *test result* is at least .10 percent blood-alcohol or the equivalent .10 grams of alcohol per 210 liters of breath. The fact that the driver's true blood-alcohol or breath-alcohol level may be slightly lower (due to the Intoximeter's acknowledged margin of error) is no longer relevant to the driver's guilt under AS 28.35.030(a)(2).

**9.** 854 P.2d 740 (Alaska App.1993).

██ Mangiapane was not charged under AS 28.35.030(a)(2) but rather under the corresponding Anchorage ordinance, AMC 9.28.020(B)(2). But as we noted in *Anchorage v. Ray* [9], AS 28.01.010(a) "prohibits municipalities from promulgating traffic laws that diverge from state law." We therefore "presume that the drafters of the municipal ordinances intended that the ordinances be interpreted in the same manner as the corresponding statutes." [10]

For this reason, Judge Ashman properly declined to instruct the jury concerning the Intoximeter's inherent margin of error. This margin of error (the machine's "working tolerance") had no relevance to the jury's decision.

We thus conclude that neither of Mangiapane's appellate claims has merit. Accordingly, the judgement of the district court is AFFIRMED.

**10.** *Id.* at 743.