**Gregory L. ALEXANDER, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. A–7502.**

Court of Appeals of Alaska.

Dec. 15, 2000.

Randall S. Cavanaugh, Kalamarides & Associates, Anchorage, for Appellant.

Carmen E. ClarkWeeks, Assistant Municipal Prosecutor, and Mary K. Hughes, Municipal Attorney, Anchorage, for Appellee.

Before MANNHEIMER and STEWART, Judges, and RABINOWITZ, Senior Supreme Court Justice.*

## OPINION

STEWART, Judge.

Following a bench trial on stipulated facts, District Court Judge James N. Wanamaker convicted Gregory L. Alexander of driving while intoxicated (DWI), a misdemeanor.[1] Alexander appeals, contending that District Court Judge Natalie K. Finn erroneously denied his motion to suppress the results of his breath test and his independent blood test. Alexander claims that the police interfered with his right to consult with his attorney before taking a breath test. We affirm because Judge Finn's findings are supported by the record and we agree with Judge Finn that on that record, suppression of evidence was not warranted.

---

* Sitting by assignment made pursuant to article IV, section 11 of the Alaska Constitution and Administrative Rule 23(a).

1. Anchorage Municipal Code § 9.28.020.

*Facts and Proceedings*

On March 12, 1999, at about two in the morning, Anchorage Police Officer Chris Goldberg stopped Alexander for driving the wrong way on 5th Avenue, a one-way street. When Goldberg contacted Alexander, he noticed signs indicating that Alexander had been drinking. Goldberg administered some field sobriety tests. After Alexander completed these tests, Goldberg arrested him for DWI.

Goldberg transported Alexander to the 5th Avenue police substation for a breath test. At the substation, Goldberg kept Alexander's hands cuffed behind his back. Goldberg testified that Alexander was intoxicated and uncooperative; he was also upset that he had been arrested, and angry that his vehicle was impounded. Goldberg also testified that based on his eight years experience as a street officer, he has found that intoxicated people are unpredictable, and that, for safety purposes, with very few exceptions, he keeps their hands cuffed behind their backs.[2] Goldberg also testified that it was department policy to keep all DWI arrestees' hands cuffed behind their backs during DWI processing.

While at the substation, Alexander asked to use a phone. Alexander wanted to call a specific attorney, but did not know the attorney's home telephone number. Goldberg helped Alexander call Alexander's wife to get the attorney's home phone number; then Goldberg called the attorney. Before calling Alexander's wife, Goldberg turned off the substation's tape recorder but forgot to turn off the personal tape recorder that Goldberg had in his pocket. The substation's recorder remained off until Alexander completed his calls. Alexander did not know about Goldberg's personal recorder.

Once Alexander's attorney answered the phone, Goldberg switched the phone from the speakerphone to the handset, and placed the handset between Alexander's shoulder and head. Goldberg testified that he regularly does this, and it usually works. However, Alexander was unable to keep the phone

from slipping out, so Goldberg held the phone to Alexander's head. Goldberg heard Alexander's side of the conversation, but could not hear the attorney.

Goldberg testified that in his experience, regardless of where he stood in the substation, had the speakerphone been used, he would have heard both sides of the conversation. Goldberg said he always tries to have arrestees use the handset because it is more private.

Alexander also testified. He said that Goldberg was approximately a foot and a half away, and that having Goldberg stand so close made him nervous and uneasy when talking to the attorney; as a result, he lied to his attorney, and told him that he had only had one drink. Based on this information, the attorney ' lvised Alexander to request an independent blood test. After this conversation, Alexander provided a breath sample for the Intoximeter. The result showed that his blood alcohol content (BAC) was .120 percent. Alexander requested an independent test, and was transported to a hospital. Alexander's independent test showed a blood alcohol content of .106 percent.

Alexander moved to suppress the results of both the breath and the blood tests. He argued that the police violated his right to consult privately with counsel because Goldberg stood close enough to hold the phone, tape recorded the conversation, and kept Alexander's hands cuffed behind his back.

At an evidentiary hearing before Judge Finn, the Municipality conceded that Goldberg's inadvertent tape recording of Alexander's conversation should be excluded. However, the Municipality argued that there was no basis for suppressing the test results. Judge Finn accepted the Municipality's concession regarding the tape, but denied Alexander's motion to suppress the test results.

On September 17, 1999, following a bench trial based on stipulated facts, Judge Wanamaker found Alexander guilty of DWI.

---

**2.** Goldberg said he cuffed Alexander's hands in front for a short period when Alexander had to use the restroom. Later, during the blood test at the hospital, Goldberg had to remove the cuffs to allow blood to be drawn.

*Did the police interfere with Alexander's right to confer with an attorney?*

On appeal, Alexander contends that under *Farrell v. Anchorage,*[3] Goldberg did not make a reasonable effort to accommodate Alexander's right to consult privately with counsel. While Alexander acknowledges that the privacy right at issue here is balanced against the police duty to maintain custodial observation, he argues that Goldberg took no action to provide any privacy. This argument, however, is contradicted by the evidence. According to the record, Goldberg did make efforts to provide privacy— Goldberg turned off the substation's tape recorder before calling the attorney and switched from speaker phone to the handset when the attorney answered. Goldberg placed the phone between Alexander's shoulder and head, and took no notes or other action that Alexander can identify as additionally intrusive. Goldberg held the phone only when Alexander was unable to keep the phone in position without assistance.

Alexander argues that Goldberg did not satisfy *Farrell* because he kept Alexander's hands cuffed behind his back, which in turn required Goldberg to stand close enough to hold the phone. He also argues that Goldberg violated his rights by inadvertently recording the conversation.

Following the supreme court's decision in *Copelin v. State,*[4] we have held that even though police officers have a duty to maintain custodial observation of an arrestee before administration of the breath test, the arrestee must be given a reasonable opportunity to hold a private conversation with his or her attorney.[5] We have also held that "an arrestee's right to confer with counsel 'is not violated merely because the arresting officer maintains physical proximity to the [arrestee].' "[6] As we said in *Mangiapane v. Anchorage,* "this court has suppressed Intoximeter results only when, in addition to maintaining physical proximity, 'the police engaged in additional intrusive measures, intrusions that convinced [arrestees] that the officers were intent on overhearing and reporting [the arrestees'] conversations with their attorneys.' "[7]

Alexander testified that he was nervous and uneasy when talking to his attorney because Goldberg stood approximately a foot and a half away from him while helping him with the phone. However, Alexander did not identify anything other than Goldberg's proximity that made him uneasy. Nor did he claim that he thought that Goldberg was trying to listen to the conversation. The record shows that Alexander was aware that Goldberg had turned off the substation tape recorder, and was not aware that Goldberg had a personal tape recorder.

In addition, the record shows that Goldberg did not insist upon holding the phone to stay close to Alexander—instead, he first tried to have Alexander cradle the phone between his shoulder and head. Goldberg said that in his experience, this usually works; only when this was unsuccessful did he hold the phone. In short, while Goldberg did not release Alexander from his handcuffs, he also did not stand next to Alexander to hold the phone until he had to. Thus, except for Goldberg's proximity, Alexander did not identify anything that Goldberg did that intruded on Alexander's conversation, or made him believe that Goldberg intended to overhear and report the conversation.

While Alexander condemns Goldberg's decision to keep Alexander handcuffed, this fact is but one of the circumstances reviewed when determining what "measures [to pro-

3. 682 P.2d 1128 (Alaska App.1984).

4. 659 P.2d 1206 (Alaska 1983).

5. *See Farrell v. Anchorage,* 682 P.2d at 1130 (*"Copelin* ... makes it clear that, in order to comply with the statutory mandate of AS 12.25.150(b), police must make a reasonable effort to accommodate an arrestee's right to consult privately with counsel once a call has been made".); *see also Mangiapane v. Anchorage,* 974 P.2d 427, 429 (Alaska App.1999); *Kiehl v. State,* 901 P.2d 445, 446 (Alaska App.1995); *Reekie v. Anchorage,* 803 P.2d 412, 414 (Alaska App.1990); *Anchorage v. Marrs,* 694 P.2d 1163, 1165 (Alaska App.1985) (accord).

6. *Mangiapane,* 974 P.2d at 429 (quoting *Kiehl,* 901 P.2d at 447).

7. *Id.*

vide privacy] should be deemed reasonable."[8] We have recognized that police do not have to compromise their safety to allow a defendant a greater degree of privacy when making a phone call. For example, in *Kameroff v. State*,[9] we said that "an arrestee's right to call an attorney is not absolute. Police officers certainly need not jeopardize their own safety (or the safety of others) to allow a prisoner to make a telephone call."[10] Applying the test in *Farrell*, if Goldberg's decision was reasonable, then keeping Alexander handcuffed would not violate Alexander's right to consult privately with counsel.

At the evidentiary hearing, Goldberg testified that he kept Alexander's hands cuffed behind his back because he did not trust Alexander.[11] Goldberg testified that, based on eight years as a police officer, he had general safety concerns when dealing with intoxicated people in general because they are unpredictable. But he also testified that he specifically distrusted Alexander. In addition to being intoxicated (and, thus, unpredictable), Alexander had been uncooperative, and was angry and upset because he had been arrested and because his vehicle had been impounded. Also, Judge Finn had reviewed part of the audiotape that Goldberg inadvertently made of the DWI processing. She found that Alexander's "demeanor when talking to [his] wife and when talking to the officers [was] somewhere between aggressive and obnoxious...."[12] Based on the testimony and the tape, Judge Finn found that Goldberg kept Alexander "[hand]cuffed behind his back for safety reasons.... And while the defendant claims that the officer's presence had a chilling effect on his conversation with counsel, to the court it sounded like the defendant was simply posturing within the officer's earshot for the benefit of the officer and the attorney." The record supports Judge Finn's findings.

Alexander also argues that Goldberg intruded upon the privacy of his consultation with his attorney because Goldberg tape recorded Alexander's side of the conversation. However, we rejected a similar argument in *Kiehl v. State*.[13] In *Kiehl*, we upheld the admissibility of the defendant's breath test even though the police officer surreptitiously and intentionally recorded Kiehl's conversation with his attorney. "Kiehl remained oblivious [to] the recording" and thus "the surreptitious recording resulted in no discernible impairment of Kiehl's consultation with counsel."[14] Alexander's position is similar to Kiehl's; Alexander has not shown that his consultation with counsel was impaired because Goldberg inadvertently recorded Alexander's side of the conversation.

Looking at all the circumstances, Alexander has not shown that Judge Finn's findings are clearly erroneous. Based on those findings, we agree with Judge Finn that Goldberg did not violate Alexander's statutory right to confer with counsel.

The judgment of the district court is AFFIRMED.[15]

COATS, Chief Judge, not participating.

MANNHEIMER, Judge, dissenting.

I dissent from my colleagues' decision.

The defendant in this case, Gregory Alexander, was arrested for driving while intoxicated and was taken to a police substation.

---

8. *Farrell*, 682 P.2d at 1131 ("Precisely what measures should be deemed reasonable will necessarily depend upon the circumstances of the individual case.") (citing *Copelin*, 659 P.2d at 1212).

9. 926 P.2d 1174 (Alaska App.1996).

10. *Id.* at 1178.

11. As noted above, Goldberg also said that police department policy requires that officers keep DWI arrestees handcuffed.

12. At one point during the processing, Alexander, before calling the attorney, told Goldberg

that, "I've been really super polite, but I am getting pissed."

13. 901 P.2d at 445.

14. *Id.* at 447.

15. Appellee urges this court to reexamine its precedents in this area and hold that suppression of any breath or blood alcohol test results is only warranted when there has been a total denial of the arrestee's right under *Copelin* and AS 12.25.150(b) to consult privately with an attorney. We find it unnecessary to address this contention given our holding.

The arresting officer, Chris Goldberg, offered Alexander the opportunity to call an attorney, but the officer would not remove Alexander's handcuffs or even allow Alexander to place his cuffed hands in front of him. Because Alexander could not use his hands to hold the telephone, it was necessary for Goldberg to stand directly next to Alexander and hold the phone to Alexander's face during the entire conversation. The question is whether this procedure was an undue infringement of Alexander's right to speak with an attorney.

In a series of cases [1], we have acknowledged that arrestees are entitled to a modicum of privacy when they consult an attorney following their arrest. At the same time, we have also recognized that this right of privacy must be weighed against the officer's need to maintain control of the arrestee and the officer's need to observe the arrestee for the fifteen minutes mandated by 13 AAC 63.040(a)(1) before asking the arrestee to take a breath test. The trial judge in Alexander's case, District Court Judge Natalie K. Finn, expressed understandable frustration that judges are repeatedly required to apply these seemingly contradictory policies when they assess the legality of DWI processing procedures.

In *Mangiapane v. Anchorage*[2] and in *Kiehl v. State*[3], we attempted to define a line of demarcation that would resolve the tension between an arrestee's right to consult counsel and a police officer's need to keep the arrestee under observation. We held that an arrestee's right of privacy is not unduly infringed merely because an officer remains nearby. Rather, the test is whether the police "engaged in additional intrusive measures, intrusions that convinced [the arrestee] that the [police] were intent on overhearing and reporting [the arrestee's] conversations with their attorney." [4]

In *Mangiapane*, we concluded that the arrestee's right of privacy was not violated when the officer stood ten to fifteen feet away during the arrestee's conversation with the attorney.[5] But in Alexander's case, the officer's physical proximity to Alexander—and the attendant psychological effect of this proximity—were quite different. Officer Goldberg stood right next to Alexander (approximately eighteen inches away), holding the telephone receiver to Alexander's face while Alexander's hands remained manacled behind his back. Not only did the officer physically control Alexander's access to the telephone receiver, but it was obvious to Alexander that the officer would overhear everything Alexander said to his attorney.

Alexander in fact testified that, because of the officer's presence, he felt that he could not truthfully answer his attorney when the attorney asked him how much he had been drinking. Alexander lied, saying that he had consumed only one drink. On the basis of this false information, Alexander's attorney urged him to submit to the breath test and to request an independent blood test. These tests ultimately proved that Alexander was guilty of driving while intoxicated; the breath test result was .12 percent blood alcohol, while the blood test result was .106 percent.

Officer Goldberg testified that, if an arrestee can keep the telephone receiver cradled between jaw and shoulder, he will step away and afford the arrestee more privacy. But Alexander could not do this; the receiver kept slipping and, because Alexander's hands were manacled behind his back, he was unable to retrieve and re-position the receiver. For this reason, Goldberg stood directly next to Alexander and held the receiver to Alexander's face.

I assume that Goldberg was only trying to help Alexander and did not purposely arrange things so that he could overhear Alex-

---

1. See *Mangiapane v. Anchorage*, 974 P.2d 427 (Alaska App.1999); *Kiehl v. State*, 901 P.2d 445 (Alaska App.1995); *Reekie v. Anchorage*, 803 P.2d 412 (Alaska App.1990); *Farrell v. Anchorage*, 682 P.2d 1128 (Alaska App.1984).

2. 974 P.2d at 429.

3. 901 P.2d at 447.

4. *Mangiapane*, 974 P.2d at 429 (quoting *Kiehl*, 901 P.2d at 447).

5. *See id.*

ander's words. Nevertheless, Goldberg's good faith is not a sufficient reason to uphold the abridgement of Alexander's privacy. The test announced in our prior cases is an objective one: Did the police engage in intrusive measures, aside from maintaining physical proximity, that would convince a reasonable person in the arrestee's position that the police were intent on overhearing and reporting the attorney-client conversation?

Here, Goldberg saw that Alexander was finding it impossible to cradle the telephone receiver between his jaw and his shoulder, yet the officer refused to unshackle Alexander's hands or even allow Alexander to move his hands to the front of his body. Instead, Goldberg placed himself directly next to Alexander and held the receiver to Alexander's face. In the absence of some apparent reason for these extraordinary precautions, a person in Alexander's position might well conclude that one of the officer's aims was to overhear the attorney-client conversation. Indeed, Alexander testified that Goldberg's presence constrained him from speaking frankly with his attorney.

There is an alternative rationale for upholding Officer Goldberg's conduct. Goldberg testified that, to ensure officer safety, he and his fellow police officers are trained to keep all arrestees handcuffed behind their backs.

I do not minimize the danger that police officers face on a daily basis, especially from people who are angry and intoxicated. As this court stated in *Kameroff v. State*: "Police officers certainly need not jeopardize their own safety (or the safety of others) to allow a prisoner to make a phone call." [6] But we must not allow generalized claims of officer safety to stand as a ready answer whenever an arrestee's rights are restricted. A specific peaceable arrestee should not be denied the right to a private conversation with their attorney based on generalized concerns about how some hypothetical arrestee might endanger officer safety.

When Alexander placed the phone call to his attorney, Goldberg and Alexander were no longer in the field. They were at a police substation—a more controlled environment where Alexander posed less of a danger and where, presumably, Goldberg could quickly summon help if Alexander became unruly or violent.

Goldberg did testify that Alexander was uncooperative, was unhappy about being arrested, and was especially unhappy about the officer's decision to impound his car. But Goldberg did not say that Alexander was unruly or violent, or that Alexander was acting so erratically that Goldberg felt compelled to keep him handcuffed behind his back.

In fact, the record reveals that Goldberg switched Alexander's cuffs to the front of his body when Alexander had to use the restroom, and that Goldberg removed Alexander's cuffs for the independent blood test. This evidence suggests that Goldberg did not believe he was endangering himself by allowing these short intervals of less intensive restraint. It also suggests that there was no pressing reason to deny Alexander one additional short interval of reduced restraint, with his hands cuffed in front of his body, so that he could make the telephone call to his attorney.

Arrestees, especially intoxicated arrestees, can be unpredictable, and I can understand why Officer Goldberg, or the police department in general, might adopt a policy of keeping all DWI arrestees, even the most peaceable and submissive, handcuffed behind their backs. But when a peaceable arrestee is brought to a place of detention or to an established police facility, we should no longer rely on generalized speculation about what some other arrestees might do. Instead, the law should focus on the specific circumstances of this particular arrestee's case. In Alexander's case, the question is whether Alexander gave any indication that it would be unsafe to allow him to handle the telephone himself. The record indicates that the answer is no.

I say "indicates" because Judge Finn apparently upheld the handcuffing on generalized concerns for officer safety; she and the parties never specifically focused on the question of whether there were case-specific

---

6. 926 P.2d 1174, 1178 (Alaska App.1996).

reasons to keep Alexander handcuffed behind his back during the telephone call. For this reason, I would remand Alexander's case to the district court. The gov__nment should be allowed to present evidence of any case-specific reasons why it was prudent to keep Alexander handcuffed behind his back while he conferred with his attorney.

If the government proves that there were articulable reasons to believe that Alexander would pose an unacceptable danger if his cuffed hands were switched to the front of his body during the telephone call, then I would uphold the legality of the behind-the-back restraint and the admissibility of the resulting breath and blood tests. But if the government fails to present evidence that Alexander was unruly or violent, that he was

acting unpredictably, or that his words or conduct gave Officer Goldberg any other articulable reason to believe that it would be dangerous to let Alexander handle the telephone, then I would rule that Goldberg violated Alexander's right to consult his attorney in relative privacy—and that the district court should have granted Alexander's motion to suppress the results of these chemical tests.